## FARMERS' BANK & TRUST CO. OF HARDINSBURG, KY., v. ATCHISON, T. & S. F. RY. CO.

Circuit Court of Appeals, Eighth Circuit.
March 17, 1928.

No. 7928.

I. Removal of causes ⊙⟹107(4)—Court should determine whether action was fraudulently pleaded under Federal Employers' Liability Act to prevent removal to federal court, though entire cause of action might thereby be defeated (Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 [45 USCA § 56]).

Where action in state court for death of railroad employee was sought to be removed to federal court on theory that allegations of plaintiff's petition that deceased was engaged in interstate commerce at time of accident were false and fraudulent to defeat jurisdiction of federal court under Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 (45 USCA § 56; Comp. St. § 8662), it was federal

court's duty to determine whether fraud in fact existed, and, if it did, to so declare, though the possible effect thereof might be ultimately to defeat the entire cause of action.

**2. Removal of causes ⟨key⟩86(1)—Allegation that case arose out of employment in interstate commerce may be shown by removal petition to be fraudulent device to prevent removal (Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 [45 USCA § 56]).**

The right of removal from state court to federal court cannot be defeated by a fraudulent allegation that case arose out of employment of decedent in interstate commerce, if there is no basis for such claim, and, if such claim is made in petition filed in state court, it may be shown by petition for removal to be merely a fraudulent device to prevent removal to federal court under Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 (45 USCA § 56; Comp. St. § 8662).

**3. Removal of causes ⟨key⟩89(1)—Allegations of removal petition, properly verified, must be accepted by state court as true.**

The allegations of a petition for removal, if properly verified, must be accepted by state court as true.

**4. Removal of causes ⟨key⟩107(7)—If no issue is taken in federal court as to statements in verified removal petition, defendant need not produce proof to sustain allegations.**

If no issue is taken in federal court as to statements of a duly verified petition for removal, plaintiff is presumed to assent to the truth thereof, and defendant is not called on to produce proof to sustain such allegations.

**5. Removal of causes ⟨key⟩86(1)—Right of removal is not established by removal petition merely traversing plaintiff's petition.**

The right of removal is not established by petition for removal which merely traverses facts of plaintiff's petition.

**6. Removal of causes ⟨key⟩107(4)—Motion to remand will be determined on sufficiency of allegations of removal petition.**

A mere formal motion to remand case from federal court to state court, from which it was removed, is in the nature of a demurrer to the removal petition, and the court will determine such motion on the sufficiency of the allegations of the petition.

**7. Removal of causes ⟨key⟩107(4)—Plaintiff, in its motion to remand, may take issue with truth of statements in removal petition.**

In its motion to remand case from federal court to which it was removed to state court, plaintiff may take issue with statements in removal petition and raise question as to truth thereof, and a motion to remand in such situation is in the nature of a plea in abatement.

**8. Removal of causes ⟨key⟩89(2)—Issues of fact arising on petition for removal are determinable by federal court.**

Issues of fact arising on a petition for removal are to be determined by the federal court.

**9. Removal of causes ⟨key⟩107(7)—Burden is on petitioner to establish allegations of removal petition based on fraud denied by plaintiff.**

Burden is on petitioner to establish the allegations of a petition for removal based on fraud, where such allegations are specifically denied.

**10. Removal of causes ⟨key⟩107(4)—Federal court held authorized to hear testimony or accept affidavits on issue whether death of railroad employee was fraudulently alleged to have occurred in interstate commerce to deprive federal court of jurisdiction (Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 [45 USCA § 56]).**

Where plaintiff in its motion to remand action for death of railroad employee joined issue with allegations of petition for removal, that allegation of plaintiff's petition that death occurred in interstate commerce and was therefore governed by Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665) was fraudulent device to deprive federal court of jurisdiction under section 6 of said act, as amended by Act April 5, 1910, § 1 (45 USCA § 56; Comp. St. § 8662), federal court was at liberty, in its discretion, to hear testimony or accept affidavits thereon.

**11. Removal of causes ⟨key⟩107(4)—On plaintiff's motion to remand, question was whether allegations that decedent was engaged in interstate commerce were so baseless as to constitute fraudulent attempt to defeat federal court's jurisdiction (Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 [45 USCA § 56]).**

Where defendant alleged, as ground for removal of action for death of railroad employee to federal court, that allegations of plaintiff's petition that deceased was engaged in interstate commerce at time of accident were fraudulent device to defeat federal court's jurisdiction under Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 (45 USCA § 56; Comp. St. § 8662), question on plaintiff's motion to remand was not whether deceased was engaged in interstate commerce when killed, but whether record so conclusively showed that he was not engaged in interstate commerce that allegations of plaintiff's petition must be regarded as so baseless as to constitute a fraudulent attempt to defeat jurisdiction of federal court, and if it is fairly doubtful whether or not he was so engaged, there could be no fraud in so pleading.

**12. Removal of causes ⟨key⟩25(1)—Allegation that accident occurred in interstate commerce held not so baseless as to constitute fraud on federal court's jurisdiction otherwise existing (Employers' Liability Act, § 6, as amended by Act April 5, 1910, § 1 [45 USCA § 56]).**

Where railroad employee was killed while engaged in unloading supplies from train moving in interstate commerce which supplies were intended to be used for both interstate and intrastate purposes, petition in action for his death, alleging that accident occurred in interstate commerce within Employers' Liability Act, *held* not so baseless, colorable, and false as to constitute fraud on federal court's jurisdiction under section 6, as amended by Act April

5, 1910, § 1 (45 USCA § 56; Comp. St. § 8662), urged as ground for removal to federal court.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by the Farmers' Bank & Trust Company of Hardinsburg, Ky., as administrator of the estate of J. M. Crume, deceased, against the Atchison, Topeka & Santa Fé Railway Company, removed from state court to the District Court by defendant. Plaintiff's motion to remand to state court was denied [11 F.(2d) 993]. Plaintiff, refusing to prosecute further, judgment of dismissal was entered, and plaintiff brings error. Reversed and remanded, with instructions.

C. A. Randolph, of Kansas City, Mo., for plaintiff in error.

George J. Mersereau, of Kansas City, Mo. (Cyrus Crane, John H. Lathrop, Winston H. Woodson, Richard S. Righter, and George O. Pratt, all of Kansas City, Mo., on the brief), for defendant in error.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. Plaintiff in error, a corporation organized under the laws of Kentucky, and acting under the authority thereof, as administrator of the estate of J. M. Crume, deceased, brought action in the circuit court of Jackson county, Mo., against defendant in error, the Atchison, Topeka & Santa Fé Railway Company, a citizen of the state of Kansas, to recover damages for the death of said Crume, the petition alleging that he was killed at or near Castle Rock, Colo., by negligence upon the part of defendant in error while he was employed in interstate commerce. The action was on behalf of Crume's surviving widow and three minor children.

For convenience, plaintiff in error will be designated as plaintiff, defendant in error as defendant, and Crume as deceased.

Defendant filed a petition for removal of the cause to the federal court, alleging that the statements in the complaint filed with relation to Crume being at the time of his injury and death engaged in interstate commerce were false, and that the same were made with the fraudulent purpose of preventing removal of the cause to the federal court. The state court denied the petition for removal. Defendant, however, lodged a transcript of said cause in the District Court of the United States for the Western District of Missouri. Plaintiff thereupon filed a motion to remand the case to the state court, deny-

ing any fraud, urging that the federal court was without jurisdiction, and reiterated the claim of its original complaint that decedent was engaged in interstate commerce at the time of his injury and death. The court, in passing on the question, took into consideration, not only the allegations of the complaint, the petition to remove, and the motion to remand, but also certain depositions that had been taken by plaintiff's counsel.

Plaintiff, while asserting that it did not invoke any decision of the court on the question of decedent being engaged in interstate commerce, referred the court to the depositions taken by it, and presented a digest of a part thereof which it claimed supported allegations of its petition concerning interstate commerce. Plaintiff's counsel stated also so it was expected to have other evidence on the same question to submit when the case was tried on its merits.

The court denied the motion to remand, and held that decedent was not employed in interstate commerce at the time of his injury and death; that he was aiding in unloading supplies which might be used in interstate commerce, but which were not then so employed, and held the burden was upon plaintiff to show that he was entitled to the benefit of the act commonly known as the Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), and that the testimony was practically conclusive that the carrier's train was exclusively engaged in intrastate commerce.

The action was based on the Federal Employers' Liability Act (35 Stat. L. p. 65, c. 149), which provides that every common carrier by railroad while engaged in commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee, if such injury or death results in whole or in part from the negligence of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, etc. The act provides that the contributory negligence of the employee shall not be a bar to recovery, but that damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee, and also provides that employment risks are not assumed where the violation by the carrier of any statute enacted for the safety of employees has contributed to the injury.

In 1910, section 6 of said act was amended to read in part as follows: "The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 36 Stat. L. p. 291, c. 143 (45 USCA § 56; Comp. St. § 8662).

Congress evidently intended by this amendment that a plaintiff should have an election as to where a case arising under the act should be brought, and, if brought in a state court of competent jurisdiction, that it should not be removed to any court of the United States. If this case was one therefore arising under the act hereinbefore referred to the state court had jurisdiction. The entire theory of removal in this case is that the allegations of the petition that deceased was engaged in interstate commerce at the time of his injury and death were false and fraudulent, that it must have been so known to plaintiff at the time action was commenced, and that the attempt to thus plead a case under the Employers' Liability Act amounted to a fraud on the jurisdiction of the federal court.

The petition filed by plaintiff in the state court alleged that deceased and defendant were both engaged in interstate commerce; that Crume's death was caused by a collision between defendant's train on which he was working with another of defendant's trains, and in part is as follows:

"Plaintiff further states that on or about the 30th day of June, 1924, the said J. M. Crume was in the employ of the defendant as a car supply helper, in a certain car loaded with supplies; that he was assisting and facilitating the movement and transportation of said supplies through and between the states of Colorado and New Mexico, and filling requisitions, disbursing and unloading said supplies at various of defendant's stations along its line in the states of Colorado and New Mexico for the immediate use of the defendant in its commerce between the several states; that said car of supplies was a part of a train operated by the defendant carrying freight and goods between the states of Colorado and New Mexico and other states of the United States; that said train could not proceed on its interstate journey, carrying its cargo of goods destined to other states, until defendant's stations along the line were furnished by said supply car with the supplies necessary for the immediate use of the defendant in carrying on its aforesaid

commerce between the several states; that plaintiff's interstate duties were to fill orders and requisitions for such supplies and unload and disburse the same at the various stations along defendant's line as said train proceeded on its interstate journey as aforesaid, and that said train could not proceed on its journey until said orders and requisitions for such supplies were filled, disbursed, and unloaded at the stations as aforesaid; that, at the time of the injuries and death of the said J. M. Crume on said day, he was filling orders and requisitions of said supplies and unloading and disbursing the same in the manner and for the purposes aforesaid, and thereby engaged in, and assisting the defendant in carrying on its business of interstate commerce by railroad."

The petition for removal set out the various allegations of plaintiff's petition relative to the claimed interstate commerce, and stated that such allegations were not true either in law or fact, and then proceeded to set forth facts which it claimed showed that decedent was not engaged in interstate commerce, viz. that at the time in question he was assisting in furnishing supplies such as stationery, tools, oil, and other articles from a supply car to stations and other places of deposit, not for immediate use in the conduct of the railroad's business; that the supplies were being moved from point to point on petitioner's line, not for immediate use, but for the purpose of replenishing supplies and materials at the local stations of petitioner; that said decedent had nothing to do with the movement and transportation of said supplies, and that all the connection he had with it was accepting and filling orders on requisitions furnished to him; that whether the supplies would be used in interstate or intrastate commerce could not be determined at the time of furnishing them, and that decedent was not engaged in interstate commerce, nor in any work so closely connected therewith as to bring him within the Federal Employers' Liability Act or Acts and their amendments, and that the allegations of plaintiff's petition as to decedent's employment in interstate commerce were untrue, and were made for the fraudulent purpose of defeating the right of removal to the federal court.

The motion to remand reiterated the statements of the original complaint, and again set forth the work in which decedent was engaged, and claimed that it was so closely related to interstate commerce as to be practically a part thereof, and denied any fraudulent purpose in the matter. Both the

petition for removal and the motion to remand were verified.

[1] The court did not determine the question upon the pleadings, but considered a number of depositions that had been taken by plaintiff's attorney, to which procedure plaintiff's attorney, while insisting that the court had no right to determine the question of interstate commerce because it was practically determining the merits of the case, did not enter serious objection—in fact took no exception thereto. While it is true that the question of interstate commerce goes to the merits of plaintiff's case, yet if, as stated in Clark v. Chicago, R. I. & P. Ry. Co. et al. (D. C.) 194 F. 505, "fraud has been employed in presenting the facts for the purpose of defeating the federal jurisdiction, then it is the duty of this court so to declare, even though the possible effect might be ultimately to defeat the entire cause of action." However, a court should be careful not to determine the merits of a case in passing on a jurisdictional question.

[2] The real issue raised as the basis for removal is the claimed fraudulent action of plaintiff in asserting in its petition in the state court that decedent was engaged in interstate commerce at the time of his injury and death. The right of removal to the federal court could not be defeated by a fraudulent allegation that the case arose out of employment by decedent in interstate commerce if there was no basis for such claim, and, even though such claim be made in the petition filed in the state court, it may be shown by petition for removal to be merely a fraudulent device to prevent removal to the federal court. Chesapeake & Ohio Railway Co. v. Cockrell, Adm'r, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544; Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; Wecker v. National Enameling Co., 204 U. S. 176, 27 S. Ct. 184, 51 L. Ed. 450, 9 Ann. Cas. 757.

[3] The allegations of a petition for removal, if the same are properly verified, must be accepted by the state court as true. Stone v. South Carolina, 117 U. S. 430, 6 S. Ct. 799, 29 L. Ed. 962; Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; Wilson v. Republic Iron & Steel Co. et al., 257 U. S. 92, 42 S. Ct. 35, 66 L. Ed. 144. While the statutes provide no method of determining the questions involved in the removal to the federal court, or remanding to the state court, of a cause of action, the procedure is fairly well established by the decisions of the courts.

[4] If no issue is taken in the federal court as to the statements of a duly verified petition for removal, plaintiff is presumed to assent to the truth thereof, and defendant is not called upon to produce proof to sustain such allegations. Wilson v. Republic Iron & Steel Co. et al., 257 U. S. 92, 42 S. Ct. 35, 66 L. Ed. 144.

[5] It is well settled that the right of removal is not established by petition for removal which merely traverses the facts of plaintiff's petition. Kraus v. Chicago, B. & Q. R. Co. et al. (C. C. A.) 16 F.(2d) 79; Chesapeake & Ohio Ry. Co. v. Cockrell, Adm'r, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544; Southern Railway Co. v. Lloyd, 239 U. S. 496, 36 S. Ct. 210, 60 L. Ed. 402.

[6] A mere formal motion to remand is in the nature of a demurrer to the removal petition (Bradshaw v. Bowden et al. [D. C.] 226 F. 323), and the court will determine such motion upon the sufficiency of the allegations of said petition.

[7] Plaintiff may, however, take issue in its motion to remand with the statements in the petition for removal and raise the question as to the truth thereof, and the motion to remand in such situation is in the nature of a plea in abatement. Dillon on Removal of Causes, § 158, says on this subject: "If the petition, in connection with the record, is sufficient on its face but states as ground of removal facts which are not true, as, for example, in regard to citizenship, or value, where the value does not appear in the pleadings, issue may be taken thereon in the Circuit Court by a plea in the nature of a plea in abatement; but such an inquiry cannot be gone into in the state court. A plea in abatement to a petition for removal will not be tested by technical rules, but it is sufficient if it sets out fairly and with adequate certainty matters of fact which, if true, negative the jurisdiction of the federal court. And it appears that when the allegations of the petition are thus traversed the burden is on the party at whose instance the suit was removed to establish the facts necessary to give jurisdiction to the Circuit Court."

[8] Issues of fact arising upon a petition for removal are to be determined by the federal court. Chesapeake & Ohio Ry. Co. v. Cockrell, Adm'r, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544; Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; Burlington, Cedar Rapids and Northern Ry. Co. v. Dunn, 122 U. S. 513, 7 S. Ct. 1262, 30 L. Ed. 1159; Boatmen's Bank of St. Louis, Mo., v. Fritzlen

et al. (C. C. A.) 135 F. 650; Donovan v. Wells, Fargo & Co. (C. C. A.) 169 F. 363, 22 L. R. A. (N. S.) 1250.

[9]. The burden is upon the petitioner to establish the allegations of a petition for removal based on fraud where the same are specifically denied. Clark v. Chicago, R. I. & P. Ry. Co. et al. (D. C.) 194 F. 505; Carson v. Dunham, 121 U. S. 421, 7 S. Ct. 1030, 30 L. Ed. 992; Wilson v. Republic Iron & Steel Co. et al., 257 U. S. 92, 42 S. Ct. 35, 66 L. Ed. 144; Kansas City Suburban Belt Ry. Co. v. Herman, 187 U. S. 63, 23 S. Ct. 24, 47 L. Ed. 76.

[10] Plaintiff here in its motion to remand joined issue on the allegations of the petition for removal, and thereby an issue was presented, viz. that of fraudulently depriving the federal court of jurisdiction of the case; that issue was one to be heard and determined by the federal court, and that court was at liberty in its discretion to hear testimony or accept affidavits thereon. Clark v. Chicago, R. I. & P. Ry. Co. et al. (D. C.) 194 F. 505; Martin v. New York, N. H. & H. R. Co. et al. (D. C.) 241 F. 696; Wecker v. National Enameling and Stamping Co., 204 U. S. 176, 27 S. Ct. 184, 51 L. Ed. 450, 9 Ann. Cas. 757; Lewis on Removal of Causes, p. 265.

The affidavits considered by the court showed that decedent was employed on a supply train consisting of some 26 cars, 3 or 4 of them being supply cars, operating between Albuquerque, N. M., and Denver, Colo., on defendant's interstate railway; that this train carried numerous and sundry supplies such as picks, shovels, wrenches, oil, waste, light bulbs, battery supplies, stationery, and blanks of various kinds, the same to be unloaded for the use of defendant at stations along defendant's line between Albuquerque and Denver where such supplies had been requested; that decedent and other supply men on the train had possession of orders and requisitions for supplies from defendant's agents in different towns through which the train was to pass; that the supplies were collected at the doors of the car by decedent and others, and preparations made to unload them when the stations were reached; that the work of unloading was performed by him (this is admitted in the petition for removal); that these supplies were articles which had in practically all instances come from another state; that the tools delivered at various stations were to be used in work on defendant's track, the oil was to be used in switch lights within two or three days after delivery, the picks and shovels were to be used in surfacing defendant's tracks; that some of the supplies consisted of forms for the valuation of baggage checks and monthly freight reports; that these various forms were to be used for reports as to matters relating to interstate commerce shipments; that decedent's post of duty on the train was in one of the supply cars, being the one in which his body was found after the wreck at Castle Rock; that a large number of tools were to be delivered at Sedalia, which was beyond the point of the accident, and that it would have been decedent's business to deliver these tools; that some of the stationery was to be delivered at Castle Rock, the place of the accident.

Mr. Langworthy, who was a section foreman, testified that he sent in his requisition for supplies 10 or 12 days before the supply car was to come through, and the question was asked him:

"Q. You order only those tools needed for immediate use? A. Well, yes.

"Q. You don't aim to keep an excess of supplies? A. No."

This train carried 22 cars of slag for the purpose of ballasting defendant's right of way at Sedalia, Colo. Freight also was received by the train moving from points within the state of Colorado. There was other evidence introduced of this same general nature.

It is apparent that this train was operating in interstate commerce. United States v. Chicago & N. W. Ry. Co. (D. C.) 157 F. 616; St. Joseph & G. I. Ry. Co. v. United States (C. C. A.) 232 F. 349; Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Illinois Central R. R. Co. v. Louisiana R. R. Commission of Louisiana, 236 U. S. 157, 35 S. Ct. 275, 59 L. Ed. 517. This is not seriously questioned, but it is strongly urged that decedent was not engaged in interstate commerce at the time of the accident resulting in his death. Of course, he could be an employee of the railroad and not be engaged in such commerce. Defendant concedes that tools are instrumentalities used in interstate commerce when they are actually being used in the maintenance or repair of tracks or rolling stock, but that the relation of deceased's employment in unloading tools to their actual use and application in maintaining and repairing the

roadbed and tracks was so remote that such acts did not constitute employment in interstate commerce.

[11] The trial court held that the decedent at the time of his injury and death was not engaged in interstate commerce, and defendant insists in this court that the ultimate fact to be determined in passing on the correctness of the holding of the trial court is whether on the record deceased was engaged in interstate commerce at the time he was killed. With this viewpoint we cannot agree, and, in assuming to pass on that question, we think the learned trial court erred. The real question for the trial court to determine, and now for us, is: Did the record so conclusively show that, at the time decedent was killed, he was not engaged in interstate commerce, that the allegations of the petition stating that he was must be regarded as so baseless and colorable as to constitute a fraudulent attempt to defeat the jurisdiction of the federal court. If it was a fairly doubtful question as to whether or not decedent was engaged in interstate commerce at the time of the accident, then there could be no fraud on the part of plaintiff in so pleading. There is difficulty ofttimes in determining whether a party is engaged in interstate commerce, and each case is governed largely by its particular facts.

In Shanks v. Delaware, Lack. & West. R. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797, the Supreme Court of the United States said: "The true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." See, also, Chicago, Burlington & Q. R. R. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941.

In Pedersen v. Del., Lack. & West. R. R. Co., 229 U. S. 146, 152, 33 S. Ct. 648, 650, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, this test is laid down, "Is the work in question a part of the interstate commerce in which the carrier is engaged?"

The decisions of the courts on the subject are somewhat inconsistent and give evidence of diversified viewpoints. We refer to some of them. In the following cases it was held that the employee was engaged in interstate commerce within the purview of the Federal Employers' Liability Act:

One carrying materials to be used in repairing a bridge of an interstate railroad and injured by an interstate train. Pedersen v. Del., Lack. & West. R. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, perhaps the leading federal case on the subject, and most frequently cited.

Carrying a torch in advance of a locomotive in the railroad yards, which locomotive was to be attached to an interstate train. Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096.

Taking the numbers of, sealing up, and labeling cars, some of which were engaged in interstate and some in intrastate commerce. St. Louis, San Francisco & Texas Railway Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156.

Cutting out by a brakeman on an intrastate car in a train consisting of both interstate and intrastate cars of an intrastate car so that the train may proceed on its interstate business. New York Central & Hudson River R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298. In this case (page 263 [35 S. Ct. 781]), the court said: "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

Helping in the task of raising a wrecked car to rescue a fellow employee, and coincidentally to clear a track for interstate commerce. Southern Railway Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69.

A party employed in a camp car of the railroad company, which was moved about from place to place according to the exigencies of the work of bridge carpenters, whose duties were to cook meals, make the beds, etc., for a gang of bridge carpenters. Philadelphia, Baltimore & Washington R. R. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869.

Where plaintiff on an interstate railroad was engaged in attending to a signal tower and switches, and also in a nearby building running a gasoline engine to pump water into a tank for the use of the locomotives, whether operating intrastate or interstate trains, was injured by an explosion of gasoline. Erie Railroad Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790.

Where a party whose duty was to dry sand in stoves in a small structure near the track and supply it to the locomotives was injured while running from an ash pit where

he had gone to dump ashes ⋅taken by him from one of the stoves after sanding several locomotives. Erie Railroad Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794. The court said in ⋅this case (pages 89, 90 [40 S. Ct. 455]): "Indeed something is attempted to be made of an omission, or an asserted omission, in the evidence, of the kind of commerce in which the last engine served was engaged. The distinctions are too artificial for acceptance. The acts of service were too intimately related and too necessary for the final purpose to be distinguished in legal character."

A watchman employed on an interstate railroad at a public grade crossing to signal both interstate and intrastate trains and guard the tracks. Philadelphia & Reading Ry. Co. v. Di Donato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955.

A party who had been called to assist in unloading some heavy freight. B. & O. S. W. R. R. Co. v. Burtch, 263 U. S. 540, 544, 44 S. Ct. 165, 166, 68 L. Ed. 433. The court there said: "It is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it, and it follows that the facts fully satisfy the test laid down in the Shanks Case [239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797], supra."

Repairing a track used to carry interstate trains by shoveling dirt from between the ties. Lombardo v. Boston & M. R. R. (D. C.) 223 F. 427.

Plaintiff injured while he was assistant foreman of a gang on a work train; the train being engaged in removing old rails, which had been replaced, from between the tracks where they had been left. The movement of the train was entirely within one state, but the tracks extended to other states, and were used by the railroad in interstate and intrastate commerce. Philadelphia, B. & W. R. Co. v. McConnell (C. C. A.) 228 F. 263.

One employed in operating a pumping station from which water was furnished to locomotive engaged both in interstate and intrastate commerce. Roush v. Baltimore & O. R. Co. (D. C.) 243 F. 712.

An employee injured when unloading timbers to be used in the reconstruction or repair of a bridge of an interstate railroad. Kansas City Southern Ry. Co. v. Martin (C. C. A.) 262 F. 241. See, also, Slatinka v. United States Ry. Administration et al., 194 Iowa, 159, 188 N. W. 20, 24 A. L. R.

608, where the cases are exhaustively reviewed by Justice Faville of the Iowa Supreme Court in a most able opinion; also St. Joseph & G. I. Ry. Co. v. United States (C. C. A.) 232 F. 349.

On the other hand, in the following cases it was held that the employee was not engaged in interstate commerce within the Federal Employers' Liability Act:

Injured in mining coal that might be used in interstate commerce after being mined. Delaware, Lackawanna & Western Railroad Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397.

Taking down and putting up fixtures in a machine shop for repairing locomotives used in transportation. Shanks v. Delaware, Lackawanna & West. R. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

Removal of coal from storage tracks to coal chutes, although the coal had been brought from another state and was to be used by locomotives in interstate hauls. Chicago, Burlington & Q. R. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941.

Where an employee subject to be employed in either interstate or intrastate commerce, as directed by a superior, was injured while in quest of orders, and but for the injury would have received orders requiring him immediately to make up an interstate train. Erie Railroad Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319.

Where an employee's work consisted in helping place cars owned by the carrier, containing its supply coal, upon an unloading trestle within its yards, and when the interstate movement of the cars carrying the coal occurred as long as seventeen days previously and the cars with the coal in the meantime remained upon sidings and switches in the yards. Lehigh Valley Railroad Co. v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070.

Where an employee was injured in working on an engine which had been sent to the general repair shops of the railway company from exclusive employment in interstate commerce for general overhauling; the employee being injured some 43 days thereafter. Industrial Accident Commission, etc., v. Davis, etc., 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888.

A messenger employed by a railroad company, all of whose trains were engaged in interstate commerce, killed while crossing the tracks to take to the station a coal report for transmission on to the superintendent⋅of

the railroad in another state. Hines, Director General of Railroads, v. Baechtel et al., 137 Md. 513, 113 A. 126 (based on state law).

Unloading cross-ties from a flat car on a passing track where the ties were being stored to be used at indefinite places or times, and requiring another movement before being placed in tracks used in interstate commerce. Arizona Eastern R. Co. v. Head, 26 Ariz. 137, 222 P. 1041 (based on state law).

An employee injured while unloading telegraph poles on cars whence they were being taken to repair a telegraph line used by railroad in interstate commerce. Fenstermacher v. Chicago, R. I. & P. Ry. Co., 309 Mo. 475, 274 S: W. 718.

Defendant urges that a late decision of this court, viz. Aldredge v. Baltimore & O. R. Co. (C. C. A.) 20 F.(2d) 655, is decisive of its contention. We think not. In that case plaintiff alleged in his complaint that he was engaged in interstate commerce at the time of the accident, and also specifically alleged exactly what he was doing at the time. The allegations as to what he was doing were not traversed by defendant. The facts were therefore undisputed, and as a matter of law show that the plaintiff was not engaged in interstate commerce at the time of the accident. That case is in no wise in conflict with our conclusion here, and we fail to see how it in any way sustains defendant's position.

[12] These cases which we have cited show the conflict of opinion of various courts on the question of when an employee is engaged in interstate commerce under the Federal Employers' Liability Act. We do not determine the question here of whether decedent was so engaged at the time of the accident. It is not necessary so to do, and, as we have before pointed out, this is not the controlling question. What we do decide is that defendant has failed to successfully carry the burden of showing that the allegations of the petition in the state court as to decedent being engaged in interstate commerce were so baseless, colorable, and false that the assertion thereof constituted a fraud on the jurisdiction of the federal court. Hence the claimed fraud on the part of plaintiff in alleging in its petition in the state court that decedent was engaged in interstate commerce has not been established.

The question is not here of doubtful jurisdiction of the federal court. Hence our conclusion does not conflict with the rule laid down by this court that, where the question of jurisdiction is doubtful as between the federal and the state court, the federal court will retain such jurisdiction. Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650; Clark v. Chicago, R. I. & P. Ry. Co. et al. (D. C.) 194 F. 505; Strother v. Union Pac. R. Co. (D. C.) 220 F. 731. It does not follow from a doubt as to whether the evidence shows that plaintiff was engaged in interstate commerce at the time he was killed that a doubt arises as to the respective jurisdictions of the state or federal courts. The judgment overruling the motion to remand is reversed, and the case is remanded to the trial court, with instructions to in turn sustain said motion and remand the case to the state court.

Reversed and remanded.