James CHU, Plaintiff,

v.

**PLASTIC SYSTEMS CORPORATION**
and Instrument Systems Corporation, Defendants.

No. 68 Civ. 3586.

United States District Court,
S. D. New York.

Oct. 23, 1969.

———◆———

Frederick W. Scholem, New York City, for plaintiff.

Harvey R. Blau, New York City, for defendants.

*Memorandum Opinion on
Motion to Remand*

MOTLEY, District Judge.

On August 8, 1968, plaintiff commenced this suit in the Supreme Court of New York, New York County, against defendants for alleged breach of a contract of employment. The action was commenced by the service of a summons and complaint upon both defendants in New York County seeking a judgment for $140,000.00 in damages. On the same day, defendants served their notice of appearance. Thereafter, and before answer, on September 7, 1968, defendant filed a petition for removal of the action to this court, 28 U.S.C. § 1446, on the ground that this controversy is between citizens of different states. 28 U.S.C. §§ 1441 and 1332(a) and (c). Defendants alleged that plaintiff, at the time of commencement of this action, was a citizen of New Jersey, defendant Plastics System Corporation (PSC) was a citizen of Pennsylvania where it is incorporated and has its principal place of business, and defendant Instrument Systems Corporation (ISC) was a citizen of New York where it is incorporated and has its principal place of business.

On May 29, 1969, after pretrial discovery, plaintiff moved to remand the action to the state court on the ground of no diversity, alleging that PSC, like plaintiff, is also a citizen of New Jersey, where, in fact, it has its principal place of business.

Title 28 U.S.C. § 1332(c) provides that for diversity of citizenship purposes " * * * a corporation shall be deemed a citizen of any State by which it is incorporated *and* of the State where

it has its principal place of business." (Emphasis added).[1]

■ Thus, the issue between the parties is whether PSC has its principal place of business in Carlstadt, New Jersey where certain activities are located, or in Hazelton, Pennsylvania where its major manufacturing plant is concededly located, or in New York where its parent corporation ISC is located and has its principal place of business.

Where a corporation has its principal place of business is a question of fact to be separately determined in each case. However, at least two major criteria have been developed by the case law for determining where a corporation has its principal place of business. The first criterion is referred to as the "nerve center" test, i. e., the place where the corporation's policies are made and the overall direction and control are located. Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862, 865 (S.D.N.Y. 1959). The second criterion seeks to identify the place where the corporation has a substantial predominance of corporate operations or activities even though its overall direction and control is located elsewhere. Inland Rubber Corporation v. Triple A Tire Service, Inc., 220 F.Supp. 490 (S.D.N.Y. 1963). The former criterion seems to have been applied in cases where a corporation has a strictly manufacturing or other business center or centers away from all the chief executive and administrative officers. See, e. g., In re Hudson River Nav. Corporation, 59 F.2d 971 (2d Cir. 1932); Tolchester Lines Inc. v. Dowd, 253 F. Supp. 643, 647 (S.D.N.Y. 1966). The latter criterion seems to have been applied to the larger corporations whose extensive activities are located in numerous states and in order to resolve the issue it must be determined which state has the predominance of corporate operations or activity. See, e. g., Kelly v. United States Steel Corporation, 284 F. 2d 850 (3rd Cir. 1960); Leve v. General

Motors, 246 F.Supp. 761 (S.D.N.Y. 1965). Here we have a relatively small corporation to which the first test seems applicable and fully adequate for our purposes.

ISC owns all of the stock of PSC and all of the stock of another company, International Packaging Corporation (IPC) which is located in Carlstadt, New Jersey and shares office space with PSC. The function of PSC is the manufacture, sale, and distribution of plastic sheets (Pl's Exh. G–1). IPC manufactures plastic container products from PSC's product. PSC also makes samples of products utilizing polystyrene sheets and uses the manufacturing facilities of IPC at Carlstadt for this purpose (Affidavit of plaintiff, James Chu). All of the directors of PSC and most of its principal officers are directors and officers of ISC, the parent corporation. Most of these officers and directors reside in New York where directors' meetings are held. PSC's bank accounts and its books and records are maintained in Hazelton, Pennsylvania (Affidavit of Fischbein, p. 2) whereas its legal, accounting and insurance work are all conducted from its parent headquarters in New York City (Id). Although its manufacturing activities are predominantly in Pennsylvania, all of PSC's sales to IPC and the trade and all of PSC's advertising and promotional activities are in New Jersey. Its president, Mr. Thanhauser, is also found in Carlstadt, New Jersey and its president at the time of qualifying to do business in New Jersey in 1967 gave the company's Carlstadt address as his address. (Deposition of Thanhauser, pp. 8, 10, 24–27, 30–32, 34, Pl's Exh. G–2). PSC's stationery gave the following information as its address in August 1968, "642 Dell Road, Carlstadt, New Jersey . . . Plant Address: Hazelton, Pennsylvania". (Pl's Exhs. A and B). The president as well as the vice-president for manufacturing of PSC had business cards which gave only the New Jersey

---

1. The legislative history of this section is carefully reviewed in Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F. Supp. 490 (S.D.N.Y.1963).

address. (Pl's Exh. C, Deposition of Thanhauser, pp. 32–33). All of PSC's advertising to the trade gave the New Jersey address (Pl's Exhs. I, J, K, L, M). Instructions as to what machines in Hazelton were to be used to produce certain items and at what times were issued by executives located in Carlstadt, the machine schedules and production orders were sent by teletype or written memoranda from Carlstadt, all customer complaints were referred to and handled at Carlstadt, all production reports of the Hazelton plant were sent to Carlstadt, the plant manager at Hazelton (plaintiff in this case prior to August 1968) had only an emergency account of $1,000 at his disposal (payroll was prepared in New York), there were quarterly meetings of the heads of various departments of PSC which officers of PSC and ISC attended in Carlstadt, at these meetings there was a general review of performance and policy and directions were given for future policy, end of month inventories of both raw and finished goods were sent from Hazelton to Carlstadt, financial reports were sent to New York and in some few instances general supervision and operation control was exercised directly from New York. (Affidavit of plaintiff).

PSC was originally incorporated in Pennsylvania as Sekisui Plastics Corporation (Pl's Exhs. D, E, F). All of the stock of Sekisui was purchased by ISC on or about February 24, 1967 and the name changed to PSC. Thereafter, on November 6, 1967, PSC filed a statement seeking to qualify to do business in New Jersey with its Secretary of State and received a certificate authorizing it to do business there on November 19, 1967. (Pl's Exhs. G–1, G–2, G–3, and H). The statement filed by PSC with the New Jersey Secretary of State stated that the business it would trans-

act there was "the manufacture, sale and distribution of plastic sheets" and that its principal place of business in New Jersey would be 15 Exchange Place, Jersey City, New Jersey.

At the time ISC acquired Sekisui, it already owned IPC which was based in Carlstadt, New Jersey. ISC acquired Sekisui so that it would have a controlled source of raw materials for IPC, but since that time PSC has greatly expanded its production and sales activity. Sekisui in 1966 had a sales volume of under $500,000, but for 1969 PSC's sales have been estimated at over $10,000,000. (Pl's Exh. R–2).[2] Since IPC was to be a principal customer of PSC, the administrative and executive offices of PSC were established by ISC at the same location as those of IPC, with each corporation having the same executive head, Mr. Thanhauser, and that is where those offices were at the time suit was commenced. Other executive and administrative officers of PSC were also located in Carlstadt, i. e., the vice president for manufacturing, Mr. Al-Roy, (Dep. of Al-Roy, pp. 3–7) and the sales manager (Dep. of Thanhauser, pp. 16–18). It was also from Carlstadt, that relatively minor day to day administrative and executive control over PSC was exercised. (Pl's Exh. Q).

In short, New Jersey may properly be deemed the "nerve center" of this corporation whose sales operations increased from a mere $500,000 in 1967 to over $10,000,000 in two years. (Pl's Exh. R–2). Consequently, this court concludes that PSC's principal place of business was in New Jersey at the time of commencement of this action and that PSC must be considered a citizen of that state for the purposes of this case. Scot Typewriter Co. v. Underwood Corp., *supra*; Wear-Ever Aluminum Inc. v. Sipos, 184 F.Supp. 364 (S.D.N.Y. 1960);

---

2. Plaintiff filed a reply affidavit to defendants' opposing affidavit to which was attached a trade magazine article containing this information. Since defendants who assert federal jurisdiction have the burden of proof on this motion, Leve v.

General Motors Corp., 246 F.Supp. 761 (S.D.N.Y.1965), and have not challenged these statements, the court finds them to be facts. Neither party has requested an evidentiary hearing and the court does not find one necessary.

K. S. Corp. v. Chemstrand Corp., 198 F. Supp. 310 (S.D.N.Y. 1961); Tolchester Lines, Inc. v. Dowd, *supra*.

Since plaintiff is also, concededly, a citizen of New Jersey, the case must be remanded to the state court for lack of diversity of citizenship of the plaintiff on one side and all the parties on the other side.

The motion to remand is granted. The costs of this motion are taxed against defendants. 28 U.S.C. § 1447(c).